IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DARRAH R. WALCK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-05-430-R |
| | ) | |
| W.A. "DREW" EDMONDSON, | ) | |
| Attorney General of Oklahoma, and | ) | |
| KURT SHIREY, Sheriff of | ) | |
| Pottawatomie County, Oklahoma, | ) | |
| | ) | |
| Respondents. | ) | |

## <u>REPORT AND RECOMMENDATION ON MERITS</u>

Ms. Darrah Walck faces a second trial in state court and seeks a writ of habeas corpus and injunction against the state criminal proceedings. The Court should grant habeas relief[1] and enjoin further proceedings in state court.

---

[1]    The Petitioner invokes 28 U.S.C. § 2254 and the Antiterrorism and Effective Death Penalty Act of 1996. Emergency Petition for a Writ of Habeas Corpus at pp. 2, 15 (Apr. 18, 2005) ("Petition"); Petitioner's Reply to Respondent Shirey's May 10 Response at pp. 8-9 n.2 (May 11, 2005). These provisions are inapplicable. Ms. Walck is a pretrial detainee, and 28 U.S.C. § 2254 applies only when the petitioner is "in custody pursuant to the judgment of a State court . . . ." 28 U.S.C. § 2254(a)-(b), (d)-(e) (2000). As a pretrial detainee, Ms. Walck can pursue habeas relief under 28 U.S.C. § 2241, but not under 28 U.S.C. § 2254. *See Gould v. State of Colorado*, 45 Fed. Appx. 835, 836 n.1 (10th Cir. Aug. 22, 2002) (unpublished op.); *see also Stow v. Murashige*, 389 F.3d 880, 886 (9th Cir. 2004) (noting that "a pretrial double jeopardy challenge is properly brought under § 2241"). The difference is immaterial here because the Oklahoma Court of Criminal Appeals has not addressed the merits of Ms. Walck's double jeopardy claim. In these circumstances, the federal district court must use its independent judgment in considering the claim. *See Battenfield v. Gibson*, 236 F.3d 1215, 1220 (10th Cir. 2001) ("If a claim was not decided on the merits by the state courts (and is not otherwise procedurally barred), we may exercise our independent judgment in deciding the claim." (citation omitted)).

BACKGROUND

On December 28, 2003, Ms. Walck was driving a vehicle containing Misty Moore, Lee Pena, and Clark Kincade. *See* Transcript at pp. 30, 31, 37-38, *State of Oklahoma v. Walck*, Case No. CF-04-47 (Pott. Co. Dist. Ct. May 26, 2004) ("Preliminary Hearing Transcript"); Transcript at p. 55, *State of Oklahoma v. Walck*, Case No. 2004-47 (Pott. Co. Dist. Ct. Jan. 12, 2005) ("Trial Transcript"). An accident occurred, resulting in the death of Lee Pena and the filing of charges against Ms. Walck for vehicular manslaughter. *See* Trial Transcript at pp. 10-12, 103.

Following the testimony of two individuals, the prosecutor requested a mistrial due to the unavailability of a witness, Ms. Misty Moore. Trial Transcript at p. 72. The trial court granted the motion and declined to dismiss the charges with prejudice. *Id.* at pp. 72-76.

Ms. Walck alleges that her pending retrial creates an ongoing violation of the Fifth Amendment's Double Jeopardy Clause. Petition at pp. 1, 18-27.

ABSTENTION

The threshold question for the federal district court is whether to abstain. The Court should answer in the negative.

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court stated that federal courts should not intervene in state criminal prosecutions begun before institution of a federal suit when the state court proceedings: (1) are ongoing, (2) offer an adequate forum for the petitioner's federal claims, and (3) implicate important state interests. *See Younger v. Harris*,

401 U.S. at 43. Ms. Walck does not challenge the presence of these elements. Instead, she invokes an exception to *Younger* abstention,[2] arguing that the threat of double jeopardy constitutes an "extraordinary circumstance[] in which . . . necessary irreparable injury can be shown . . . ."[3] The undersigned agrees, as a retrial would place Ms. Walck in double jeopardy and this threat constitutes an extraordinary circumstance involving irreparable injury.

In *Gilliam v. Foster*, 75 F.3d 881 (4th Cir. 1996), the Fourth Circuit Court of Appeals acknowledged that "irreparable harm cannot be shown simply because a defendant will be subject to a single criminal prosecution . . . ." *Gilliam v. Foster*, 75 F.3d at 904. But the court noted that the double jeopardy clause protects "not only against multiple convictions but also 'against being twice put to *trial* for the same offense.'" *Id.* (citation omitted; emphasis in original). Thus, "a portion of the constitutional protection [the Double Jeopardy Clause] affords would be irreparably lost if Petitioners were forced to endure the second trial before seeking to vindicate their constitutional rights at the federal level." *Id.* For that reason, the appellate court concluded that "the irreparable deprivation of this Fifth Amendment Double Jeopardy right is an extraordinary circumstance warranting federal court equitable intervention in Petitioners' state criminal proceeding." *Id.*

---

[2]    Petition at pp. 6-7; Petitioner's Reply to Respondent Shirey's May 10 Response at p. 6 (May 11, 2005).

[3]    *Younger v. Harris*, 401 U.S. at 46-55 (citation omitted).

The Fifth Circuit Court of Appeals reached a similar conclusion in *Davis v. Herring*, 800 F.2d 513 (5th Cir. 1986). In *Davis*, the federal district court granted a habeas petition to enjoin a second state prosecution. *See Davis v. Herring*, 800 F.2d at 515-16. The Fifth Circuit Court of Appeals affirmed, stating: "In order to protect against successive prosecutions, as well as multiple convictions, federal courts have the power to enjoin state criminal proceedings that would constitute double jeopardy as an exception to the comity doctrine of *Younger v. Harris*." *Id.* at 516 (footnotes omitted).

The issue also arose in the Ninth Circuit Court of Appeals. There the appellate court held: "A claim that a state prosecution will violate the Double Jeopardy Clause presents an exception to the general rule of *Younger v. Harris* . . ., requiring federal courts to abstain from interfering with pending state criminal proceedings." *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992). The court reasoned:

> The Fifth Amendment's protection against double jeopardy – "nor shall any person be subject for the same offense to be twice put in jeopardy of life and limb" – "is not against being twice punished, but against being twice put in jeopardy." Because full vindication of the right necessarily requires intervention before trial, federal courts will entertain pretrial habeas petitions that raise a colorable claim of double jeopardy.

*Id.* (citations omitted).

Other federal circuits have also concluded that the threat of double jeopardy triggers an exception to *Younger*, allowing federal intervention in ongoing state criminal proceedings.[4]

The Western District of Oklahoma appeared to adopt the prevailing view in *Grizzle v. Turner*, 387 F. Supp. 1 (W.D. Okla. 1975). There an Oklahoma defendant had undergone one trial and was scheduled to begin a retrial in four days. *See id.* at 1, 2. The defendant sought habeas relief, and the threshold issue was whether the federal court could intervene in the state proceedings prior to their completion. *See id.* at 2. The Western District of Oklahoma acknowledged that the "general rule" was to avoid intervention "absent extraordinary circumstances . . . ." *Id.* (citing *Ex parte Royall*, 117 U.S. 241 (1886)).[5] But the existence of a double jeopardy violation constituted the sort of "extraordinary circumstances . . . justifying immediate intervention by this court prior to petitioner's second trial." *Id.* at 3.

---

[4]   *See, e.g.*, *Satter v. Leapley*, 977 F.2d 1259, 1261 (8th Cir. 1992) ("A claim that a state prosecution will violate the Double Jeopardy Clause presents an exception to the general rule of *Younger v. Harris* . . . ." (citations omitted)); *Doe v. Donovan*, 747 F.2d 42, 44 (1st Cir. 1984) (acknowledging that "a colorable double jeopardy claim may constitute the threat of injury necessary to fall within the exception to the *Younger* abstention principle"); *Gully v. Kunzman*, 592 F.2d 283, 286 (6th Cir. 1979) ("[D]ouble jeopardy claims, by their very nature, do involve exceptional circumstances warranting an exercise of the power despite the attendant risk of interfering with pending state proceedings.").

[5]   For this proposition, the Western District of Oklahoma cited *Ex parte Royall* rather than *Younger*. *Grizzle v. Turner*, 387 F. Supp. 1, 2 (W.D. Okla. 1975). Together, "*Younger* and *Ex Parte Royall* are considered to have laid down the requirement that 'special circumstances' must exist before the federal courts exercise their habeas corpus, injunctive, or declaratory judgment powers to stop state criminal proceedings." *Dolack v. Allenbrand*, 548 F.2d 891, 893 (10th Cir. 1977).

5

*Grizzle v. Turner* compels examination of the double jeopardy issue prior to Ms. Walck's second trial. To do otherwise would result in irreparable loss of Ms. Walck's protection against double jeopardy. The Double Jeopardy Clause is designed to protect an accused from multiple trials. *See Abney v. United States*, 431 U.S. 651, 660-62 (1977). If Ms. Walck were to face a new trial in violation of the Double Jeopardy Clause, no court could ever undo the constitutional transgression. *See id.*[6] In similar circumstances, this Court and others have repeatedly held that intervention in ongoing state proceedings may be appropriate to avoid a double jeopardy violation. *See supra* pp. 3-5. The rationale of these decisions is applicable here. This Court should not abstain from the immediate decision regarding whether Ms. Walck is currently suffering a violation of the Double Jeopardy Clause.

---

[6] The issue in *Abney v. United States* was whether a double jeopardy claim was appealable prior to trial. *See Abney v. United States*, 431 U.S. at 653. The Supreme Court answered in the affirmative with the following explanation:

> [T]he guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense . . . . Obviously, these aspects of the guarantee's protections would be lost if the accused were forced to "run the gauntlet" a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs.

*Id.* at 661-62 (emphasis in original; citations and footnote omitted).

## DOUBLE JEOPARDY

Ms. Walck claims a double jeopardy violation from renewal of her prosecution after

the declaration of a mistrial. Petition at p. 6. The Petitioner is correct.

I.    The Fifth Amendment's Double Jeopardy Clause

The Fifth Amendment provides that "[n]o person shall . . . be subject for the same

offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.[7] Jeopardy

attaches after the jury is empaneled and sworn. *See Crist v. Bretz*, 437 U.S. 28, 35 (1978).

Thus, the Fifth Amendment protects "a defendant's 'valued right to have [her] trial

completed by a particular tribunal.'" *Id.* at 36. The Supreme Court explained:

> Because jeopardy attaches before the judgment becomes final, the
> constitutional protection also embraces the defendant's "valued right to have
> his trial completed by a particular tribunal." The reasons why this "valued
> right" merits constitutional protection are worthy of repetition. Even if the
> first trial is not completed, a second prosecution may be grossly unfair. It
> increases the financial and emotional burden on the accused, prolongs the
> period in which he is stigmatized by an unresolved accusation of wrongdoing,
> and may even enhance the risk that an innocent defendant may be convicted.
> The danger of such unfairness to the defendant exists whenever a trial is
> aborted before it is completed. Consequently, as a general rule, the prosecutor
> is entitled to one, and only one, opportunity to require an accused to stand trial.

*Arizona v. Washington*, 434 U.S. 497, 503-505 (1978) (footnotes omitted). Thus, "[t]he

discretion to discharge the jury before it has reached a verdict is to be exercised 'only in very

---

[7]    The prohibition against double jeopardy appears in the Fifth Amendment, which applies only
to federal action. *See, e.g., Smith v. Kitchen*, 156 F.3d 1025, 1028 (10th Cir. 1997). Ms. Walck
faces a second prosecution in state court. However, the double jeopardy prohibition has been
incorporated into the Fourteenth Amendment's Due Process Clause. *See Benton v. State of
Maryland*, 395 U.S. 784, 794 (1969). Thus, the same prohibition applies to state and federal
prosecutions.

extraordinary and striking circumstances. . . .'" *Downum v. United States*, 372 U.S. 734, 736 (1963) (citation omitted).

When a criminal prosecution has ended in a mistrial, "the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar." *Arizona v. Washington*, 434 U.S. at 505. "[The prosecutor's] burden is a heavy one. [He] must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Id.* The term "manifest necessity" requires a "high degree" of necessity,[8] and any doubt is resolved "'in favor of the liberty of the citizen . . . .'"[9]

II.   "Manifest Necessity" in the Absence of a Prosecutorial Witness

Prior to the declaration of a mistrial, the jury had been empaneled and sworn and had heard testimony from two witnesses. *See* Trial Transcript at pp. 10-72. Ms. Walck declined to join in the request for a mistrial,[10] and the resulting question is whether the State has shown "manifest necessity" for the mistrial.  The Court should answer in the negative.

There is no steadfast rule that "the absence of witnesses 'can never justify discontinuance of a trial.'" *Downum v. United States*, 372 U.S. 734, 737 (1963) (citation omitted).  However, "the strictest scrutiny is appropriate when the basis for the mistrial is the

---

[8]     *Arizona v. Washington*, 434 U.S. at 506.

[9]     *Downum v. United States*, 372 U.S. 734, 738 (1963) (citation omitted).

[10]    Trial Transcript at p. 72.

unavailability of critical prosecution evidence . . . ." *Arizona v. Washington*, 434 U.S. 497, 508 (1978).

"Each case must turn on its facts." *Downum v. United States*, 372 U.S. 734, 737 (1963). In two cases, however, the Supreme Court has articulated guidelines for the application of the Double Jeopardy Clause when a trial is discontinued because of the unavailability of a government witness.

The first guideline was articulated in *Downum v. United States*, 372 U.S. 734 (1963). There the Supreme Court held that a retrial was impermissible. When the first trial began, the prosecution allowed the jury to be sworn even though a key witness was absent and his whereabouts unknown. *See Downum v. United States*, 372 U.S. at 735. In finding a double jeopardy violation, the Supreme Court reasoned that the prosecutor had taken "'a chance'" in allowing the jury to be empaneled without confirmation of his witnesses' presence. *Id.* at 737 (quoting *Cornero v. United States*, 48 F.2d 69, 71 (9th Cir. 1931)).[11]

The limitations of the Double Jeopardy Clause were explored in *Wade v. Hunter*, 336 U.S. 684 (1949). There the petitioner faced a court martial for raping two German women during World War II. *See id.* at 685-86. The military terminated the proceedings because the parents of the alleged victim were sick and the officers involved in the court martial were occupied with a rapid invasion into German territory. *See id.* at 691-92. The Supreme Court

---

[11]     In dicta, the Supreme Court has cited *Downum* as a categorical prohibition against "a second prosecution" when "a prosecutor proceeds to trial aware that key witnesses are not available to give testimony and a mistrial is later granted for that reason . . . ." *Arizona v. Washington*, 434 U.S. 497, 508 n.24 (1978).

viewed the military issues as "[m]omentous" and the military command's reasons for termination of the court martial as "extraordinary". *Id.* at 692. As a result, the termination of the first court martial involved manifest necessity and did not foreclose a second court martial. *Id.* at 690.

*Downum* and *Wade* reflect a continuum for the relative necessity of a mistrial when a prosecutorial witness is absent. *See United States v. Stevens*, 177 F.3d 579, 589-90 (6th Cir. 1999) (Kennedy, J., dissenting) (discussing *Wade* and *Downum* and the "continuum" of Double Jeopardy case law "concerning the unavailability of essential witnesses"). The Tenth Circuit Court of Appeals has not addressed the issue, but two sister courts have done so. In both cases, the courts relied on *Downum*, limited *Wade* because of its extraordinary facts, and concluded that the absence of a prosecution witness did not create "manifest necessity" for a mistrial.

For example, in *Mizell v. Attorney General of the State of New York*, 586 F.2d 942, 943 (2d Cir. 1978), the jury had been empaneled and sworn. *See Mizell v. Attorney General of the State of New York*, 586 F.2d at 943. The next morning, the court learned that two State witnesses had failed to appear, and the State obtained an order discharging the jury. *See id.* at 943-44.

The petitioner sought habeas relief, alleging a violation of the Double Jeopardy Clause. *See id.* The federal district court granted habeas relief, holding that a mistrial had not been required by "manifest necessity." *Id.* at 945. Citing *Downum*, the Second Circuit

10

Court of Appeals agreed, as the witnesses might have been available within five days and the jury's convenience was an insufficient basis to order a mistrial rather than a continuance. *Id.* at 947. Thus, the Second Circuit Court of Appeals held that "manifest necessity" had not required a mistrial due to the absence of prosecutorial witnesses. *Id.*

More recently, the Third Circuit Court of Appeals addressed the issue. There a jury had been sworn and empaneled. *See United States v. Rivera*, 384 F.3d 49, 52 (3d Cir. 2004). The trial progressed for a week, recessing over a long weekend in the middle of the direct examination of a witness for the State. *See id.* When trial resumed, the prosecution announced that its witness had been hospitalized with a broken leg. *See id.* The trial was continued for two days. *See id.*

When court resumed, the prosecutor stated that the witness would be unable to return to the jurisdiction until the following week. *See id.* The case was continued again, resuming four days later. *See id.* On that date, the prosecutor announced that the witness had been denied permission to fly with his medication absent a doctor's waiver. *See id.* Over the defendant's objection, the court *sua sponte* declared a mistrial. *See id.* at 53. The federal district court subsequently denied a motion to dismiss the scheduled retrial. *See id.*

The Third Circuit Court of Appeals reversed. *Id.* at 53-58. The appellate court was "particularly troubl[ed]" that the mistrial had been caused by the absence of a prosecution witness, stressing that "[t]he District Court . . . must take great care to ensure that there are no available alternatives before declaring a mistrial in such circumstances." *Id.* at 57. The

11

appeals court concluded that the trial court had not properly weighed all the alternatives and

that the absence of the witness had not created a "manifest necessity" for a mistrial. *Id.* In

reaching this conclusion, the court rejected the government's reliance on *Wade*, stating:

> The District Court here was hardly presented with the prospect of advancing
> armies or the invasion of hostile territory. Instead, a prosecution witness
> simply broke his leg while away from the jurisdiction on a long weekend.
> *Wade* is completely inapposite to the comparatively trivial trial inconvenience
> that the District Court faced.

*Id.* (citations omitted).

The reasoning of *Mizell* and *Rivera* is compelling in the present circumstances. The

trial court elected to order a mistrial without consideration of reasonable alternatives.

The key factual issue was whether Ms. Walck had control of the vehicle when the

collision occurred. In his opening statement, defense counsel stated that Misty Moore had

grabbed the wheel and caused the crash. Trial Transcript at p. 20. The prosecutor's theory

was that Ms. Walck had surrendered control of the vehicle so that she could "flash" friends

in a nearby vehicle. *Id.* at p. 16.

By the time that the mistrial occurred, two individuals had already testified. The

prosecutor then moved for a mistrial, stating only that Ms. Moore was unavailable and that

her absence had been "unforeseen". *Id.* at p. 72. The judge granted the motion without

inviting any argument or explanation from the prosecutor. *Id.* at pp. 72-75. In granting the

motion, the judge acknowledged that before the case had been called, everyone knew that

Ms. Moore was pregnant and that her due date was two to three weeks away. *Id.* at pp. 74-

75. The judge commented that after the prosecutor delivered his opening statement, the attorneys learned that Ms. Moore had been hospitalized and was to undergo a "Cesarean Section." *Id*. at p. 73. The judge's understanding was that Ms. Moore would remain in the hospital at least three days "and then whatever time frame after that." *Id*. According to the judge, the prosecutors were effectively stating that they were "not able to go forward with their case . . . without the actual testimony of Misty Moore, who they believe[d] to be a necessary witness." *Id*. at pp. 73-74. The judge added that the lack of Ms. Moore's testimony was significant because the State "may not [have been] able to put forward the best evidence that [it had]." *Id*. at p. 74.

After the judge ruled, defense counsel pointed out that the prosecutor could use Ms. Moore's preliminary hearing transcript if she was unavailable to testify in person. *Id*. at pp. 77-78; *see, e.g., Primeaux v. State of Oklahoma*, 88 P.3d 893, 905 (Okla. Crim. App.) (upholding the admission of a preliminary hearing transcript when the witness was unavailable), *cert. denied*, __ U.S. __, 125 S. Ct. 371 (2004). Without supplying any examples, the judge stated that the preliminary hearing transcript did "not go to the detail that the State would be entitled to bring if she was called as a witness." Trial Transcript at p. 77.

The judge's explanation does not bear scrutiny because: (1) The prosecutor never stated why Ms. Moore's testimony was necessary or why her preliminary hearing transcript was insufficient; and (2) the judge's reasoning improperly treated insufficiency of the State's proof as grounds for manifest necessity.

13

At the preliminary hearing, Ms. Moore testified that Ms. Walck: (1) had consumed beer on the way to an Oklahoma City nightclub,[12] (2) had drunk more beer and other liquor when she arrived at the nightclub,[13] (3) was driving the vehicle at the time of the crash,[14] (4) was driving at speeds up to 90 miles per hour after leaving the nightclub,[15] and (5) agreed to "flash" friends in a nearby vehicle even though she was driving.[16]

In granting the mistrial, the judge stated that the prosecutor would be free to delve into other matters at trial,[17] but the additional subject-matter was never identified. The judge did not ask the prosecutor what the additional subjects were, and the prosecutor did not suggest any.[18] Thus, one wonders why the trial judge was dissatisfied with the prosecutor's opportunity to use Ms. Moore's preliminary hearing transcript in lieu of her live testimony.

The trial judge also failed to explain the necessity of Ms. Moore's testimony when another passenger was apparently ready to testify in support of the State's version of events.

---

[12]    Preliminary Hearing Transcript at p. 89.

[13]    Preliminary Hearing Transcript at pp. 90-91.

[14]    Preliminary Hearing Transcript at pp. 95-96.

[15]    Preliminary Hearing Transcript at p. 92.

[16]    Preliminary Hearing Transcript at pp. 94-96.

[17]    *See supra* p. 13.

[18]    Allegedly before the prosecutor knew of Ms. Moore's unavailability, he remarked in opening statement about her anticipated testimony. The testimony would involve Ms. Walck's drinking, driving at high speeds, and effort to "flash" friends in another vehicle while she was driving. Trial Transcript at pp. 13-17. All of these matters were covered in Ms. Moore's preliminary hearing transcript. *See supra* p. 14.

14

For example, the prosecutor was planning to call Clark Kincade as a witness.[19]   At the preliminary hearing, Mr. Kincade testified that: (1) Ms. Walck had drunk beer and other liquor at the nightclub,[20] (2) the crash took place when Ms. Walck and Ms. Moore were attempting to switch seats,[21] and (3) Ms. Walck was still in the driver's seat when the collision occurred.[22]

As noted above, the defense attorney's opening statement indicated that the key issue at trial would be whether Ms. Moore had grabbed the wheel and obtained control of the car at the time of the collision.  *See supra* p. 12.  On this issue, the prosecutor promised testimony from Mr. Kincade, rather than Ms. Moore.  The prosecutor remarked in his opening statement:

> And you're going to hear from Clark Kellogg [sic] that Ms. Walck tried to do it [flash the friends in the next car].  And as a result of the alcohol, her being impaired, her not being responsible enough for that vehicle -- the speeding, the recklessnesss, as a result of all that Lee Pena died.

---

[19]   Mr. Kincade was not served with a subpoena prior to trial.  *See* Docket Sheet at p. 11, *State of Oklahoma v. Walck*, Case No. CF-2004-47 (Pott Co. Dist. Ct. Jan. 7, 2005).  But the prosecutor represented in his opening statement that Clark Kincade would testify.  Trial Transcript at pp. 13, 16.

[20]   Preliminary Hearing Transcript at pp. 35-36.

[21]   Preliminary Hearing Transcript at pp. 39-40, 47.

[22]   Preliminary Hearing Transcript at p. 39.

Trial Transcript at p. 17.[23] The Respondent has not identified any expected testimony from Ms. Moore that would not already have been included in Mr. Kincade's account.

Even without the preliminary hearing transcript or Mr. Kincade's testimony, the court could have continued the trial 2½ days. According to the prosecutor and his victim witness coordinator, they learned at about 2:00 p.m. on Wednesday, January 12, 2005, that Ms. Moore would be unable to testify for "several days." Affidavit of John J. Foley ¶ 5 (signed Mar. 17, 2005) (attached to Petitioner's Appendix, p. 237 (Apr. 18, 2005)); Affidavit of Lorie Ball ¶ 9 (signed Mar. 15, 2005) (attached to Petitioner's Appendix, p. 235 (Apr. 18, 2005)). The record is silent regarding how many other witnesses were expected to testify for the State, besides Ms. Moore. Even without trial testimony by Clark Kincade, a continuance of 2½ days would ultimately have resulted in an additional 5½ days for Ms. Moore to recuperate[24] and the only available information was that she would have been unavailable for "several days." *Supra* p. 16. The record does not contain any reason for the judge or the

---

[23]     At the preliminary hearing, Ms. Moore testified that she had grabbed the wheel "[p]robably several minutes" prior to the wreck. Preliminary Hearing Transcript at p. 97. Mr. Kincade's testimony did not contain the same admission.

[24]     A 2½ day extension would have ended the week; and the following Monday, the courthouse was closed for Martin Luther King, Jr.'s birthday. *See Pritchard v. Mackie*, 811 F. Supp. 665, 666 n.1 (S.D. Fla. 1993) (taking judicial notice of the date for Martin Luther King, Jr. Day); *see also* Resolution (signed by Pottawatomie Board of County Commissioners & Pottawatomie County Excise Board Dec. 6 & 9, 2004) (closing offices for Pottawatomie County on Monday, January 17, 2005, for Martin Luther King, Jr.'s birthday).

parties to assume that Ms. Moore would have been unable to testify with a continuance of 2½ days.[25]

If she would have remained unable to testify in person, her preliminary hearing transcript and Clark Kincade's live testimony would have been available. The trial judge did not supply any specific reason to believe that Ms. Moore's live testimony would have been necessary in light of the availability of her prior transcript and Mr. Kincade's appearance.

As in *Downum*, the prosecutor and trial judge clearly took "'a chance'" when they allowed the proceedings to continue. *Supra* p. 9. Even before the completion of *voir dire*, the trial judge and the attorneys knew that Ms. Moore was on her way to the hospital for

---

[25]     "Scheduling considerations . . . do not outweigh the [trial court's] duty to protect the defendant['s] constitutional right to be required to stand trial only once and are, by themselves, insufficient to support the declaration of a mistrial." *United States v. Rivera*, 384 F.3d 49, 56 (3d Cir. 2004); *see also United States v. Crotwell*, 896 F.2d 437, 440-41 (10th Cir. 1990) ("In the absence of [circumstances such as an inability of the jury to reach an impartial verdict on a fatal defect that would have required automatic reversal of a conviction,] concerns about judicial economy cannot form the basis for a finding of manifest necessity." (citations omitted)).

childbirth.[26] Rather than seek a continuance, the prosecutor resumed his *voir dire* and

---

[26]     In state court, the district attorney's victim witness coordinator stated under oath:

2.      In the morning hours of January 12, 2005 I received a phone call from the mother of Misty Moore who was a subpoenaed witness in the trial of State v. Walck CF-04-47.

3.      I was told that Ms. Moore was on her way to the hospital to deliver her child.

4.      I proceeded immediately to the Courtroom of Judge Douglas Combs, to reveal the emergency information concerning Misty Moore.

5.      Mr. John J. Foley (Assistant District Attorney for Pottawatomie County) was conducting the initial Voir Dire of the jury. When he completed his Voir Dire examination I approached Mr. Foley and informed him of the situation with Ms. Moore.

6.      Mr. Foley asked to approach the bench. Judge Combs summoned me up to the bench.

7.      I informed Judge Combs of the "labor" situation of Misty Moore.

Affidavit of Lorie Ball ¶¶ 2-7 (signed Mar. 15, 2005) (attached to Petitioner's Appendix, p. 235 (Apr. 18, 2005)).

Similarly, the prosecutor in the state action, Mr. John Foley, remarked in the current action:

The State, through its prosecutor John Foley . . . was advised at the conclusion of the State's initial voir dire inquiry that a medical emergency was developing with Moore regarding her pregnancy and that her presence at trial **might** be adversely affected. Foley immediately advised both the Trial Court and counsel for Petitioner of the medical matters potentially affecting Moore's ability to attend trial. This discussion occurred *prior* to the jury being sworn to try the cause at issue. The Court ordered that the trial proceed subject to revisiting concerns regarding Moore's appearance as the circumstances dictated. This course of action was not objected to by the Prosecutor or counsel for the Petitioner.

Response of Kurt Shirley, Sheriff of Pottawatomie County, Opposing Petitioner's Emergency Petition for Writ of Habeas Corpus and Response Brief in Support of Same at p. 8 (May 10, 2005) (emphasis in original).

continued with the trial.

Notwithstanding the State's calculated gamble to allow the jury to be empaneled and sworn, knowing that Ms. Moore was 8½ months pregnant and being hospitalized for childbirth, the trial judge reasoned that the prosecutor was entitled to proceed with his "best evidence" and would have been at a "severe disadvantage" without live testimony from the witness. Trial Transcript at pp. 73-75. If Ms. Moore's temporary unavailability placed the prosecutor at a "disadvantage", the judge had no duty to alleviate his burden. The judge's only function was to determine whether Ms. Moore's temporary unavailability created a manifest necessity, and it did not. Quoting with approval from a lower court opinion, the Supreme Court explained in *Downum*:

> "The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict. This does not take the case out of the rule with reference to former jeopardy. There is no difference in principle between a discovery by the district attorney immediately after the jury was impaneled that his evidence was insufficient and a discovery after he had called some or all of his witnesses."

*Downum v. United States*, 372 U.S. 734, 737 (1963) (quoting *Cornero v. United States*, 48 F.2d 69, 71 (9th Cir. 1931)).

The prosecutor's purported "disadvantage" resulted from a decision to proceed to trial, fully aware of Ms. Moore's pregnancy and hospitalization. Indeed, the trial judge acknowledged that all of the parties knew before the trial that Ms. Moore was pregnant and that her due date was only two to three weeks away. *See supra* pp. 12-13. As in *Downum*,

the prosecutor and trial judge took "a chance" and they guessed wrong. In *Downum*, the incorrect guesswork did not create a manifest necessity, and the same is true here.

## SUMMARY

Ms. Walck's jury had already been empaneled and sworn and heard testimony from two witnesses when the prosecution obtained a mistrial based on the temporary absence of one witness. The evidence suggests that Ms. Moore's absence would last "several days;" but after 2½ days, the court was going to be closed for the following three days. The trial judge never explored the possibility of a continuance of 2½ days if Ms. Moore's live testimony were truly necessary. But Ms. Moore had already given recorded testimony, and Clark Kincade was apparently ready to give live testimony on the same matters. Thus, reasonable alternatives existed to the granting of a mistrial. Under the "strictest scrutiny,"[27] Respondent Shirey has not shown a manifest necessity for the mistrial based on Ms. Moore's absence. Therefore, the Fifth Amendment bars Ms. Walck's retrial, and the Court should issue a writ of habeas corpus and enjoin further proceedings in state court.

## NOTICE OF THE RIGHT TO OBJECT

Any party may object to this report and recommendation. *See* 28 U.S.C. § 636(b)(1) (2000). Such objections must be filed with the Court Clerk for the United States District Court. *See Haney v. Addison*, 175 F.3d 1217, 1219-20 (10th Cir. 1999). The deadline for

---

[27]     *Arizona v. Washington*, 434 U.S. 497, 508 (1978); *see supra* pp. 8-9.

objections is June 16, 2005. *See* 28 U.S.C. § 636(b)(1) (2000).[28] The failure to timely object

to this report and recommendation would waive the parties' right to appellate review of the

suggested ruling. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *cf.*

*Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in

objections to the magistrate judge's recommendation are deemed waived.").

STATUS OF THE REFERRAL

The referral to the undersigned is terminated.

Entered this 6th day of June, 2005.

Robert E. Bacharach
United States Magistrate Judge

---

[28]    This Court's local civil rules ordinarily provide twenty days for objections to a report and recommendation. *See* W.D. Okla. LCvR 72.1(a).  But federal law requires objections within ten days, and the state trial is scheduled to begin in July 2005. *See* 28 U.S.C. § 636(b)(1) (2000).